Beth L. Kaufman
Charles B. Updike
Jeremy M. Weintraub
SCHOEMAN UPDIKE & KAUFMAN LLP
551 Fifth Avenue
New York, NY 10176
(212) 661-5030
*Attorneys for Plaintiff 3M Company*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
3M COMPANY,

                    Plaintiff,

      - against-

HSBC BANK USA, N.A.,

                    Defendant.
-----------------------------------------------------------------X

Civil Action No. _____

### 3M COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ......................................................................................... 1

FACTS ................................................................................................................................ 2

ARGUMENT ....................................................................................................................... 5

    I.    3M Is Likely to Succeed on the Merits ................................................................. 6

    II.   Irreparable Harm ................................................................................................... 8

CONCLUSION .................................................................................................................... 9

# TABLE OF AUTHORITIES

**Cases**

*Archer Daniels Midland Co. v. JP Morgan Chase Bank, N.A.*, No. 11 Civ. 0988
(JSR), 2011 WL 855936 (S.D.N.Y. Mar. 8, 2011) .................................................. 6, 8

*Brenntag Int'l Chemicals, Inc. v. Bank of India*,
175 F.3d 245 (2d Cir. 1999) ..................................................................................... 5, 8

*Canadian Overseas Ores Ltd. v. Compania de Acerto del Pacifico S.A.*,
528 F. Supp. 1337 (S.D.N.Y. 1982), *aff'd*, 727 F.2d 274 (2d Cir. 1984) .................... 8

*Rockwell Int'l Sys., Inc. v. Citibank, N.A.*, 719 F.2d 583 (2d Cir. 1983) ......................... 6

*Sablic v. Armada Shipping APS*, 973 F. Supp. 745 (S.D. Tex. 1997) ........................... 8

*Semetex Corp. v. UBAF Arab American Bank*,
853 F.Supp. 759 (S.D.N.Y.1994), *aff'd*, 51 F.3d 13 (2d Cir. 1995) ............................ 6

*United Bank Ltd. v. Cambridge Sporting Goods Corp.*,
41 N.Y.2d 254 (1976) ................................................................................................. 6

**Statutes**

N.Y. U.C.C. § 5-109 (McKinney) ..................................................................................... 7

## PRELIMINARY STATEMENT

In this action to enjoin payment upon a letter of credit because honoring the payment demand would facilitate a fraud, plaintiff 3M Company ("3M") submits this memorandum of law in support of its motion for a temporary restraining order and preliminary injunction.

3M applied to defendant HSBC Bank USA, N.A. ("HSBC") for a $1 million letter of credit. 3M sought the letter of credit in connection with 3M's provision, as a subcontractor, of hardware and software to Vendekabilgi Teknolojileri Ticaret Ltd. Sti. ("Vendeka"), a Turkish company, on the Electronic Toll Collection System Project (the "HGS Project") of the Turkish General Directorate of Post and Telegraph Organization and/or the General Directorate of Highways of the Ministry of Transport and Communication (both referred to herein as "PTT"). Vendeka was the prime contractor for the HGS Project.

HSBC issued the letter of credit, naming Ziraat Bank ("Ziraat") as the beneficiary. Vendeka was prohibited from drawing upon this letter of credit (the "Ziraat letter of credit") unless PTT declared Vendeka to be in default for a sum certain under any letter of credit, performance bond, or other performance guarantee issued by Vendeka to PTT relating to the HGS Project; the default was due to an event specified in the agreement between Vendeka and PTT; and the default was caused by 3M.

An attempt is being made to collect upon the Ziraat letter of credit. But any such attempt is fraudulent because PTT has never declared Vendeka in default,

PTT removed Vendeka from the HGS Project in October 2015, and Vendeka has had no involvement with the HGS Project for the past nine months. Moreover, 3M has not defaulted or otherwise failed to perform as a subcontractor.

3M has sought to determine what justification, if any, is being offered for a request that completely contravenes the provisions of 3M's engagement. To date, Ziraat has refused to supply any information. At the very least, 3M needs time to investigate the wholly unjustifiable effort to draw down $1 million on the Ziraat letter of credit.

## FACTS

In September 2012, 3M acquired the business of Federal Signal Technologies Group, including Federal Signal Technologies, LLC ("FST"). (Exhibit F to Declaration of Beth L. Kaufman, Declaration of Jack E. Driessen executed on July 26, 2016 ("Driessen Decl.") at ¶ 2.) As a result, 3M assumed FST's rights and obligations with respect to a May 23, 2011 Service Agreement (the "Service Agreement") between FST and Vendeka concerning the HGS Project. (Driessen Decl. at ¶ 2.) Vendeka agreed to the assignment of the Service Agreement from FST to 3M. (Driessen Decl. at Ex. 2.)

PTT initially selected Vendeka as the prime contractor for the HGS Project. (Driessen Decl. at ¶ 2.) Under the Service Agreement, FST and, later, 3M served as a subcontractor to Vendeka, responsible for providing hardware and software for the HGS Project. (*See* Driessen Decl. at Ex. 1.)

2

Section 4.2 of the Service Agreement required FST to provide a letter of credit to Vendeka. (Driessen Decl. at Ex. 1.) Section 4.2(a) states that Vendeka is entitled to payment under that letter of credit only if the following conditions are met, including that PTT has declared Vendeka in default:

> a. PTT declares in writing that VENDEKA is in default in an amount certain under any letter of credit, performance bond or other performance guarantee that VENDEKA has issued to PTT related to the HGS Project;
>
> b. Said default of VENDEKA is due to an event as occurring under either Article 34 or 35 of Appendix C hereto (Agreement between VENDEKA and PTT); and,
>
> c. Said event of default of VENDEKA occurring under either Article 34 or 35 of Appendix C hereto (Agreement between VENDEKA and PTT) is in turn caused by FST's failure to perform one or more of its obligations as set forth in this Agreement.
>
> d. The LOC [Letter of Credit] shall reference 4.2 above.

(Driessen Decl. at Ex. 1.)

Section 4.2(c) limits the amount that Vendeka can claim under the letter of credit to the amount owed by Vendeka to PTT caused by Vendeka's default, which must be set forth in writing by PTT:

> Any claim for payment that Vendeka may assert against the letter of credit issued by FST as provided for in this section shall be limited to the amount claimed in writing by PTT from Vendeka . . .

(Driessen Decl. at Ex. 1.)

After assuming FST's rights and obligations under the Service Agreement, 3M applied to HSBC for a letter of credit as required under Section 4.2 of the Service Agreement. (Declaration of Beth L. Kaufman executed on July 26, 2016

3

("Kaufman Decl.") at ¶ 4.) HSBC issued the Ziraat letter of credit on October 30, 2012 to Ziraat, its correspondent bank in Turkey. (Kaufman Decl. at Ex. C.)

Ziraat, in turn, issued a letter of credit to Aktif Yatirim Bankasi A.S. ("Aktif") for $1,000,000 (the "Aktif letter of credit"). (Kaufman Decl. at Ex. C.) Aktif also issued a letter of credit to PTT for $1,000,000 (the "PTT letter of credit"). (Kaufman Decl. at Ex. C.)

In accordance with the terms of the Service Agreement, including what is set forth therein as to the purposes for the letter of credit, the Ziraat letter of credit stated that HSBC will make payment upon receipt of a demand "supported by your [Ziraat's] written statement certifying that you have received a demand for payment under your guarantee number in accordance with its terms and that such demand is due to Federal Signal Technologies Responsibilities under section 4.2 of the Service Agreement dated 23 June 2011." (Kaufman Decl. at Ex. C.)

On November 5, 2012, six days after HSBC issued the Ziraat letter of credit, the Ziraat letter of credit was amended to state that HSBC would make payment upon receipt of a demand "supported by y[ou]r [Ziraat's] written statement certifying that you have received a demand for payment under your A/M SBLC in accordance with its terms." (Kaufman Decl. at Ex. D.)

The expiration date of the Ziraat letter of credit was extended until September 3, 2016. (Kaufman Decl. at Ex. A.) The expiration date of the Aktif letter of credit was extended until August 3, 2016. (Kaufman Decl. at Ex. A.) The

4

expiration date of the PTT letter of credit was extended until July 18, 2016. (Kaufman Decl. at Ex. A.)

In October 2015, PTT replaced Vendeka with Tetra HGS Elektronik Sistemleri A.S. ("Tetra") as the prime contractor on the HGS Project. (Driessen Decl. at ¶¶ 4-5.) Vendeka signed an agreement whereby it agreed to be replaced by Tetra as the prime contractor on the HGS Project. (Driessen Decl. at Ex. 4.) Vendeka had no role with the HGS Project following its removal by PTT. (Driessen Decl. at ¶¶ 4, 8.)

On July 18, 2016, the day the PTT letter of credit expired, Ziraat made a demand for payment on the Ziraat letter of credit. (Kaufman Decl. at Ex. E.)

PTT has never declared Vendeka in default in connection with the HGS Project or in default under the contract between PTT and Vendeka concerning the HGS Project. (Driessen Decl. at ¶ 7.) PTT has never set forth in writing any sum that is owed by Vendeka to PTT as a result of any default by Vendeka. (Driessen Decl. at ¶ 7.) Moreover, 3M is not now and has not been in default, let alone a default that caused a default by Vendeka.

## ARGUMENT

3M is entitled to a preliminary injunction. Preliminary injunctive relief requires the moving party to show a likelihood of success on the merits or serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping in the movant's favor, which 3M can amply demonstrate. *See Brenntag Int'l Chemicals, Inc. v. Bank of India*, 175 F.3d 245, 249

5

(2d Cir. 1999) (affirming grant of injunctive relief prohibiting issuing bank from making payment on letter of credit). 3M must also show irreparable harm, which means "but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied," *id.*, something that 3M also can amply demonstrate.

## I.     3M is Likely to Succeed on the Merits

The Court should enjoin HSBC from making payment upon the Ziraat letter of credit because any such payment would facilitate a fraud.[1]

Although courts generally do not interfere with executory letter of credit transactions, the "well-established exception to the rule" is where there is fraud in the transaction. *Semetex Corp. v. UBAF Arab American Bank*, 853 F.Supp. 759, 773 (S.D.N.Y.1994), *aff'd*, 51 F.3d 13 (2d Cir. 1995); *see also Rockwell Int'l Sys., Inc. v. Citibank, N.A.*, 719 F.2d 583, 589 (2d Cir. 1983) (a bank's obligation under a letter of credit does not extend to protect a party that seeks to "run off with [the] plaintiff's money on a *pro forma* declaration which has absolutely no basis in fact"); *United Bank Ltd. v. Cambridge Sporting Goods Corp.*, 41 N.Y.2d 254, 259 (1976) (issuer of letter of credit may be enjoined from making payment when there is fraud in the transaction); *Archer Daniels Midland Co. v. JP Morgan Chase Bank, N.A.*, No. 11 Civ. 0988 (JSR), 2011 WL 855936, at *5 (S.D.N.Y. Mar. 8, 2011) (granting

---

[1] The Ziraat letter of credit as amended states that it is "subject to International Standby Practices (1998), International Chamber of Commerce Publications No. 590 ('ISP98')." ISP98 states that defenses based on fraud are "left to applicable law." New York law should therefore govern.

6

temporary restraining order and preliminary injunction to prohibit issuing bank from paying on letter of credit under the fraud exception).

The fraud exception is codified in the New York Uniform Commercial Code, which provides that a court may temporarily or permanently enjoin an issuer from paying on a letter of credit where not doing so would facilitate a fraud. N.Y. U.C.C. § 5-109 (McKinney).

Here, payment by HSBC on the Ziraat letter of credit would facilitate an intentional and material fraud. Under the Service Agreement, the Ziraat letter of credit was not supposed to be drawn upon unless several conditions were satisfied, including that PTT declared Vendeka in default, the default was caused by 3M, and PTT set forth a written sum certain owed by Vendeka due to its default.

None of the conditions in the Service Agreement has been satisfied. PTT has not declared Vendeka in default. 3M has not caused Vendeka to default. PTT has not set forth a written sum certain owed by Vendeka due to any default.

Further, none of the conditions in the Service Agreement is ever likely to be satisfied because Vendeka's involvement with the HGS Project ended more than nine months ago when Vendeka was replaced by Tetra. Since then Vendeka has had no involvement with the HGS Project.

Given the absence of any default, or notice of default, or compliance with the other conditions of Section 4.2 of the Service Agreement, and Vendeka's complete separation from the HGS Project, the demand for payment is an effort to put $1

million into the pocket of some party or parties involved in the HGS Project, who, it is clear, is not or are not entitled to receive it.

## II. Irreparable Harm

3M would be irreparably harmed absent equitable relief. Irreparable harm exists when there is a substantial chance that upon final resolution of the action, 3M cannot be returned to the position it previously occupied. *See Brenntag Int'l Chemicals, Inc.*, 175 F.3d at 249.

The lack of an adequate alternative forum to pursue claims against defendants who lack a presence in the United States satisfies irreparable harm. *See Archer Daniels Midland Co.*, No. 11 CIV. 0988 JSR, 2011 WL 855936, at *4; *Sablic v. Armada Shipping APS*, 973 F. Supp. 745, 748 (S.D. Tex. 1997) (war-torn Croatia an inadequate alternative forum given the political and military instability of the region). An alternative forum may be inadequate where a party to the litigation is owned or affiliated with the government. *See Canadian Overseas Ores Ltd. v. Compania de Acerto del Pacifico S.A.*, 528 F. Supp. 1337, 1342 (S.D.N.Y. 1982), *aff'd*, 727 F.2d 274 (2d Cir. 1984).

Insolvency or the precarious financial condition of those liable also satisfies the irreparable harm requirement. *See Brenntag Int'l Chemicals, Inc.*, 175 F.3d at 250.

Here, 3M is threatened with immediate and irreparable harm absent injunctive relief if HSBC makes payment to Ziraat. It is not known what presence, if any, Ziraat, Aktif, Vendeka, or PTT have in the United States. Pursuing any

action in Turkey against Ziraat, Aktif, Vendeka, or PTT is fraught with uncertainty, even more so now give the political uncertainty and upheaval caused by the recent coup attempt. Turkey is in the midst of a state of emergency.

Whether a fair and just proceeding can be maintained in Turkey against Turkish governmental agencies, like PTT, also is unknown.

Whether Ziraat, Aktif, Vendeka, or PTT have assets in the United States that could be used to satisfy any potential money judgment against all or any of them is unknown.

The financial solvency of possible wrongdoers like Vendeka is unknown.

With an injunction, 3M can further investigate what occurred and who the responsible parties are, and pursue necessary criminal and civil penalties, if applicable. A preliminary injunction will maintain the current status quo and cause no further damage while this investigation goes forward.

## CONCLUSION

For the foregoing reasons, 3M respectfully requests that its motion be granted in its entirety.

Dated: New York, New York
       July 27, 2016

                              SCHOEMAN UPDIKE & KAUFMAN LLP

                              By: _____
                                  Beth L. Kaufman
                                  Charles B. Updike
                                  Jeremy M. Weintraub
551 Fifth Avenue
New York, NY 10176
(212) 661-5030
*Attorneys for 3M Company*